IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE OF HAWAII,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CHARLES ERIC BROUGHTON, also known as ERIC BROUGHTON<br><br>　　　　Respondent. | Cr. No. 13-00415 HG |

**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND TO STATE COURT**
**(ECF No. 4)**

Defendant Charles Eric Broughton, a Federal Protective Service Officer, filed a Notice of Removal under 28 U.S.C. § 1442(a)(1) on April 19, 2013. Defendant Broughton seeks removal because he is an officer of the United States, maintains he was acting under color of office, and alleges a colorable federal defense. The State of Hawaii seeks remand of this matter to state court.

Defendant Broughton has established that removal was proper under 28 U.S.C. § 1442(a)(1). The Motion for Remand (ECF No. 4) is **DENIED**.

**BACKGROUND**

**I.　Factual Background**

On December 20, 2012 at approximately 3:15 pm, Officer Charles Eric Broughton ("Defendant" or "Officer Broughton") encountered a car driven by Mario Ybarra ("Ybarra"). Officer Broughton was driving home from work, and both drivers were traveling northbound on H2 Freeway. Officer Broughton was traveling unaccompanied in his authorized home-to-work vehicle, a white Chevrolet Tahoe Sports Utility Vehicle ("SUV") with Federal Protective Services ("FPS") and Department of Homeland Security ("DHS") markings on the sides.[1] Ybarra was driving a BMW convertible and his wife, Wendy Ybarra, was sitting in the passenger's seat.

**II.  Facts in Dispute[2]**

    **A.   <u>Plaintiff State of Hawaii's Version of Events</u>**

Ybarra claims that he was following Officer Broughton's SUV on the H2 Freeway, and after the SUV suddenly slowed from 60-65 mph to 50 mph, Ybarra also slowed by braking. At the same time, a black truck behind Ybarra's BMW began flashing its lights. Ybarra activated his turn signal intending to change lanes, and

---

[1] Ybarra claims that Broughton's SUV did not have any U.S. Department of Homeland Security decals on the rear of the vehicle.

[2] Ybarra's version of the incident is recounted in the State of Hawaii's Motion for Remand, ECF No. 4. Broughton's version of the incident is recounted in his Memorandum in Support of Removal, ECF No. 1-4.

2

the black truck similarly activated its signal to change lanes. As Ybarra proceeded to change lanes, Officer Broughton activated his roof-top emergency light bar.

Ybarra maintains that Officer Broughton's white SUV took the Mililani Mauka exit off the H2 Freeway, and that is when Ybarra saw the SUV's Department of Homeland Security label on the side of the vehicle. Ybarra continued on H2 and exited the freeway at the Mililani Tech Park exit. Moments later, Wendy noticed Broughton's SUV approaching them from behind.

Ybarra claims Broughton then pulled up next to Ybarra on Kamehameha Highway and motioned for Wendy to roll down her window. After Wendy rolled down her window, Broughton yelled: "Hey you got a fucking problem with me?" Wendy and Ybarra observed Broughton in his Department of Homeland Security uniform at this point. Wendy replied, "No." Broughton then asked, "You need to say something to me." Wendy replied, "No." Broughton continued to ask "is there something you need me to do?" Wendy responded, "No, just leave us alone."

Ybarra claims Broughton continued to follow them. At a stop light on Kamehameha Highway, Ybarra stopped his vehicle to obtain Broughton's name and badge number. When Ybarra approached Broughton's window, he asked for Broughton's name and badge number. Broughton had his gun displayed on the center part of the steering wheel and tapped his gun on the steering wheel,

drawing Ybarra's attention to the gun. Ybarra put both hands in the air and told Defendant he was required to provide the requested information. Broughton then stuck his gun in the center of Ybarra's chest and asked if they had a problem. Ybarra responded that there was no problem and returned to his car with his hands still in the air. After this incident, Ybarra called 911 to report the incident to the Honolulu Police Department.

    **B.    Defendant Broughton's Version of Events**

Officer Broughton claims Ybarra began tailgating him while driving on the H2 Freeway, and he turned on his rear emergency lights in an effort to warn Ybarra.

Broughton claims that after he turned off his lights, while still on the H2 Freeway, Ybarra pulled up next to him and leaned over the passenger side of his vehicle and began violently displaying his middle finger and yelling.

Broughton suspected Ybarra was a military member due to their location, near an Army installation located off of the H2 Freeway. Broughton decided to report Ybarra's behavior to his military commander. Broughton proceeded to follow Ybarra and was about to turn onto the street that contained the entry gate of Wheeler Army Airfield. While both cars were waiting in stopped traffic, Ybarra left his car and approached Broughton's window while yelling at him. Broughton removed his service weapon from its holster and placed it on his lap, fearing that Ybarra may

have been armed.  Broughton claims he returned the weapon to its holster once he determined that Ybarra was unarmed.  Broughton denies raising his weapon and denies pointing the gun at any part of Ybarra's body.

**PROCEDURAL HISTORY**

On March 19, 2013, the State of Hawaii ("State") filed a criminal complaint against Officer Broughton in the Circuit Court of the First Circuit, State of Hawaii, charging him with Terroristic Threatening in the First Degree, in violation of Hawaii Revised Statute ("HRS") § 707-716.  On March 28, 2013, Officer Broughton appeared in the Circuit Court of the First Circuit for arraignment. Broughton pled not guilty to the charge.

On April 19, 2013, Officer Broughton filed a Notice of Removal pursuant to 28 U.S.C. § 1442(a)(1).[3]  (ECF No. 1.)

On May 10, 2013, the State of Hawaii filed an "Opposition to Defendant's Notice of Removal of State Prosecution."  (ECF No. 4.)  The Court construed the State's filing as a Motion for Remand to State Court.

On June 6, 2013, Officer Broughton filed an Opposition to the State's Motion for Remand.  (ECF No. 12.)

On June 13, 2013, the State filed a Reply.  (ECF No. 13.)

---

[3] Defendant's Notice was timely filed and did, on its face, set forth a basis for the Court's exercise of jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).  28 U.S.C. § 1446(c).

5

On June 19, 2013, the Court held a hearing on the Motion for Remand.  At the hearing on June 19, 2013, counsel agreed on the record that the Court decide the Motion for Remand based on the pleadings, memoranda, and argument.[4]

**STANDARD OF REVIEW**

A federal officer facing prosecution in state court may remove the case to federal court under 28 U.S.C. § 1442.  Removal is proper when the defendant (1) is a federal officer and (2) the prosecution is for or relating to any act under color of such office.  28 U.S.C. § 1442(a)(1).  Additionally, the defendant must (3) allege a colorable federal defense.  Mesa v. California, 489 U.S. 121, 129 (1989).

Section 1442 is interpreted broadly in favor of removal where, as here, a federal officer is seeking a federal forum.[5] Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252 (9th Cir.

---

[4] The Court had set an evidentiary hearing for June 19, 2013, as contemplated by 28 U.S.C. § 1446(c)(5), but the parties represented on the record that neither the State of Hawaii nor Officer Broughton wished to call any witnesses.

[5] Removal rights are broad under § 1442 due to the government's interest in protecting federal officers. Section 1442 permits federal officers to remove both civil and criminal cases; to remove a case even if a plaintiff could not have filed the case in federal court in the first instance; and § 1442 is not subject to the well-pleaded complaint rule. By contrast, § 1441 provides only for civil removal and removals thereunder are subject to the well-pleaded complaint rule. Durham, 445 F.3d at 1253.

2006). "[R]emoval under § 1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." Arizona v. Manypenny, 451 U.S. 232, 241 (1981). Removal enables a defendant to adjudicate the validity of his immunity defense in a federal forum. Id. at 242 (citing Willingham v. Morgan, 395 U.S. 402, 407 (1969)). The Supreme Court has held that "the right of removal is absolute for conduct performed under color of federal office, and . . . the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" Id.

**ANALYSIS**

**I. Broughton is a federal officer**

It is undisputed that Defendant Broughton is an officer of the United States. Broughton is employed as a Federal Law Enforcement Officer with the Department of Homeland Security. At the time of the alleged offense, Broughton was serving as the Federal Protective Service Area Commander in the Pacific Islands, Area Region 9. (Memorandum in Support of Removal at 19.)

**II. Broughton was acting under color of office**

To establish that the defendant is charged with an act arising "under color of office" a federal "officer must show a nexus, a 'casual connection' between the charged conduct and the

7

asserted official authority." Jefferson Cnty., Ala. v. Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 2075, 144 L. Ed. 2d 408 (1999).

Defendant Broughton claims that he was acting under color of office because he was "engaged in his authorized home-to-work commute in a government issued and marked law enforcement vehicle, while in full uniform" when he encountered Ybarra on the freeway. (Memorandum in Support of Removal at 15.) Broughton argues that there was a casual connection between his actions and his asserted official authority because 40 U.S.C. § 1315(b)(2)(c) authorizes a Federal Protective Services ("FPS") officer to make arrests without a warrant for misdemeanors committed in their presence or for felonies based on probable cause. Id. at 13.

Broughton cites Ybarra's tailgating and aggressive hand gestures as the catalyst for his actions. Under Hawaii law, following too closely is an offense pursuant to Hawaii Revised Statute ("HRS") § 291C-50. Although a HRS § 291C-50 offense constitutes a "violation," rather than a felony or misdemeanor, see HRS § 701-107, a Hawaii Attorney General Opinion states that a police officer can arrest an individual for an offense classified as a violation. Haw. Op. Att'y Gen. No. 76-4 (1976). Officer Broughton alleges that he was justified in his actions under 40 U.S.C. § 1315(b)(2)(c), because Ybarra's tailgating and

aggressive behavior provided him with reasonable suspicion to conduct a traffic stop and/or investigate Ybarra's driving.

The State of Hawaii argues that Officer Broughton was not acting under color of office because he was acting outside of his official duties. The State argues that the scope of a FPS officer's official duty and authority is confined to what is necessary to protect federal property or persons on the property. (Motion for Remand at 14.) The State cites United States v. House, 684 F.3d 1173 (11th Cir. 2012), to support its argument that Officer Broughton acted outside his authority.

Reliance on the House case is misplaced. In House, a FPS officer was convicted of illegally conducting traffic stops in violation of the Fourth Amendment. During the trial FPS officials presented testimony about FPS agency policy:

> The officers testified that agency policy prohibited officers from conducting traffic stops for minor traffic violations outside of federal property in the State of Georgia. Agency policy likewise prohibited officers from activating the emergency lights on their vehicles outside of federal property, except in response to a life-threatening emergency, while in hot pursuit of a felon, or with prior approval from a Federal Protective Service Mega Center Operator or a supervisor.

Id. at 1185. Although the Eleventh Circuit Court of Appeals affirmed four of the defendant's convictions because the jury found that the defendant did not have probable cause or reasonable suspicion when he made the traffic stops, the court remanded the remaining four convictions, holding:

> [T]he district court erred in instructing the jury that a traffic stop is unreasonable under the Fourth Amendment whenever conducted by a law enforcement officer acting without jurisdiction or authority. The Supreme Court has ruled that a traffic stop is reasonable under the Fourth Amendment when supported by probable cause or reasonable suspicion even if it is inconsistent with agency policy, or state law.

Id. at 1184 (citing Whren v. United States, 517 U.S. 806, 813-16, 116 S.Ct. 1769, 1774-76, 135 L.Ed.2d 89 (1996); Virginia v. Moore, 553 U.S. 164, 173-76, 128 S.Ct. 1598, 1605-07, 170 L.Ed.2d 559 (2008)). The Court's analysis of Officer Broughton's actions for purposes of 28 U.S.C. § 1442 is not limited to the scope of an FPS officer's authority under agency policy. Id.

Officer Broughton has represented that there was reasonable suspicion to make a traffic stop based on Ybarra's driving and behavior. Additionally, after Officer Broughton began his investigation, Ybarra's actions arguably constitute a violation of 18 U.S.C. 111. 18 U.S.C. 111 provides:

> Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both . . . .

18 U.S.C. § 111(a)(1).

The test to determine if a federal officer was engaged in the performance of official duties for 18 U.S.C. § 111 purposes is a determination of whether the federal officer was acting within the scope of employment, or whether the federal officer

10

was "engaged in a personal frolic or detour." U.S. v. Schweitzer, 35 Fed. Appx. 331 (9th Cir. 2002).

When Ybarra approached Officer Broughton's parked car near the gate entrance, it is arguable that Ybarra violated 18 U.S.C. § 111 because Ybarra intimidated Broughton or interfered with Broughton's investigation while he was acting in performance of his official duties.

Interpreting Section 1442 broadly in favor of removal, there is a causal connection or nexus between Officer Broughton's actions on December 20, 2012, as a federal officer, and the criminal charge pending against him. Officer Broughton is being charged with a crime that was allegedly committed while in the course of investigating a traffic violation, based on reasonable suspicion, while he was driving his official FPS vehicle, in uniform, while engaged in his authorized work-to-home commute.

**III. Broughton has raised a colorable federal defense**

In Mesa, the United States Supreme Court held that "federal officer removal under 28 U.S.C. 1442(a) must be predicated upon averment of a federal defense." 489 U.S. at 139. The Supreme Court explained that under Section 1442(a), "it is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes." Id. at 136. Section 1442(a)(1) does not require a finding that a defense will

be successful for removal to be deemed appropriate; a "colorable" defense need only be plausible. United States v. Todd, 245 F.3d 691, 693 (8th Cir. 2001).

Officer Broughton cites a federal defense under the doctrine of Supremacy Clause immunity. (Memorandum in Support of Removal at 20.) Under the Supremacy Clause of the United States Constitution, a defendant may be immune from criminal liability if he can prove that he reasonably believed that his actions were necessary and proper in the performance of his duties. See New York v. Tanella, 239 F. Supp. 2d 291, 298 (E.D.N.Y. 2003). In the case before the Court, Officer Broughton has raised a colorable federal defense.

The Court has jurisdiction and declines to remand the action to state court. In making the finding of denial of remand, the Court does not reach the merits of the criminal complaint or any defenses that may be presented in the course of the prosecution.

## CONCLUSION

The State of Hawaii's Motion for Remand (ECF No. 4) is **DENIED**. The Clerk's Office is directed to notify the First Circuit Court, State of Hawaii, that removal is permitted, that this Court has jurisdiction over this matter, and that no further

action shall be taken in state court.[5]

    IT IS SO ORDERED.

    DATED:   Honolulu, Hawaii, June 27, 2013.



                                    /S/ Helen Gillmor
                                    _____
                                    Helen Gillmor
                                    United States District Judge

State of Hawaii v. Broughton; Crim. No. 13-00415 HG; **ORDER DENYING PLAINTIFF'S MOTION FOR REMAND TO STATE COURT (ECF No. 4)**

---

[5] 28 U.S.C. § 1446(c)(5) ("If the United States district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, which shall proceed no further.").